CHADWICK AND OTHERS, appellants, *v.* CHADWICK, respondent.

COURTS — *Probate court — Construction of will.*— The probate courts of Montana have no power or authority to entertain a petition involving the construction of a will. Such jurisdiction can be exercised by the supreme and district courts only.

SAME — *Appeal — Supreme court — District court.*— Where the probate court has no power to entertain the subject-matter of a petition, there can be no appeal from its decision to the district court, nor from the district court to the supreme court.

*Appeal from Third District, Lewis and Clarke County.*

PETITION in probate court for the decision of certain questions arising under the will of W. F. Chadwick. Judgment for petitioners. Defendants appealed.

IN HOMESTEAD CASE.

HEDGES & MILLER, for the appellants.

The homestead is an exemption law; as such is wholly of statutory creation, and cannot be extended beyond the purposes of its creation.

The supreme court of California has recognized two homesteads of separate and distinct creation, and of separate and distinct characteristics; one created by the joint act of the husband and wife during coverture, and the other by the probate court in the exercise of powers conferred upon it. See *Mawson* v. *Mawson*, 50 Cal. 543; *Estate of Moore*, 57 Cal. 444, and cases therein cited.

The only authority vested in the probate court to set apart homesteads where none have been set apart during the life-time of the decedent is by virtue of section 134 of the Probate Act, page 216, Revised Statutes of Montana, and this section declares that it shall be done "in the manner provided in article 2 of this chapter," which is article 2 of chapter V of Probate Act.

The right of the probate court to select in the manner stated makes the manner the measure of the power conferred upon the court. *Cowell* v. *Martin*, 43 Cal. 605; Sedgwick on Construction of Statutes and Constitutional Law, 304; *Estate of McCauley*, 50 Cal. 544; *Mawson* v. *Mawson*, 50 Cal. 539.

If it is held that our statutes provide for a probate homestead, we contend that this is not a proper case, for the reasons that ample provision was made by the will for the widow, and that she having made probate of the will thereby elected to take under it and is therefore estopped from claiming anything contrary to its provisions. See *Estate of Balentine*, 45 Cal. 699; *Cameto* v. *Dupuy*, 47 Cal. 79, 80; Thompson on Homesteads, sec. 940, pp. 742–3; Redfield on

Wills, p. 369; *Etcheborne* v. *Auzerais*, 45 Cal. 125; 4 Kent's Com. 57; *Crane* v. *Crane*, 17 Pick. 427; *Little* v. *Birdwell*, 27 Tex. 691; *Nash* v. *Young*, 31 Miss. 134; *Ratliff* v. *Baldwin*, 29 Ind. 16.

The rights of dower and homestead are parallel. The doctrine of election applicable to dower is equally applicable to homestead. See Thompson on Homesteads, 544; *Meech* v. *Meech*, 37 Vt., 419; Story's Eq. Jur. sec. 1075; 3 Wait's Act. and Def. 660–1, and cases cited; 2 Scribner on Dower, 468, secs. 92 and 95; 1 Pomeroy's Eq. Jur. sec. 552 and note 2.

The acceptance of the devise in her favor would estop her from claiming against provisions of the will. See 45 Cal. 124; *Sulzberger* v. *Sulzberger*, 50 Cal. 385; *Morrison* v. *Bowman*, 29 Cal. 337; 2 Redfield on Law of Wills, 369 and 370.

CHARACTER OF PROCEEDS OF MINING PROPERTY CONVEYED BY DEED IN ESCROW.

When a deed has been delivered as an escrow it has no effect as a deed until condition has been performed, and no estate passes until the second delivery but remains in the grantor. See 3 Washburn, 268–273; 2 Wait's Act. and Def. 495 and cases cited; Martindale on Con. 193; 1 Barb. 500; 1 Johns. Ch. 296; 6 Wend. 669; 12 Johns. 421; 6 Com. 619.

The intentions of the parties to the escrow agreement will determine whether it is an escrow or not. In the case at bar, Broadwater did not agree to take the deed at all. No action against him for the purchase price could be maintained.

The agreement between Chadwick and Broadwater was not an escrow. There was no bargain and sale of the properties described. *Fitch* v. *Bunch*, 30 Cal. 212; 2 Bl. Com. 307; 4 Kent's Com. 446; 3 Wash. Real Prop. star page 583.

The title has not yet passed to Broadwater, and he must go to the heirs and devisees upon his agreement with Chadwick for title. Section 461, page 274, R. S. of Mont.; Exhibits D and E of statement.

Until the condition be performed, and the deed delivered over, the estate does not pass, but remains in the grantor. 4 Kent's Com. 503, star page 454; 3 Wash. 269.

If grantor dies before second delivery, and money is paid as a consideration, it goes to the heirs and not the legal representatives. 3 Wash. 273; 29 N. J. 25; 67 N. Y. 560.

There was no revocation of the will of Chadwick by the conveyance to Broadwater. Title in him was not wholly divested; the property passed by the will subject to the same remedies on Chadwick's agreement with Broadwater for a specific performance against the devisees as might have been had if the title had devolved by succession. R. S. of Mont. 1879, secs. 461 and 463 of Probate Act, on p. 274.

These statutes evidently were intended to modify the harsh and unreasonable doctrine complained of by Chancellor Kent on star pages 529 to 531, inclusive, of his Commentaries.

J. C. ROBINSON and BULLARD & BARBOUR, for the respondent.

1st. The will of decedent did not affect the homestead, but it is expressly exempted from wills by statute (section 436, page 271, Revised Statutes). This section contains a positive inhibition against disposing of the homestead by will. See sections 133 to 140, inclusive, page 216, Revised Statutes; *Sulzberger* v. *Sulzberger*, 50 Cal. 387.

There is no provision of our statutes for recording a homestead, and it is conceded that the property in question was the homestead of decedent and wife, and was set apart as such. It is the law of this territory that a husband, by his own act, cannot divest the wife of the homestead, and if he can of part, he can of all. And he can no more do so by will than by deed.

The homestead is not the property of the husband alone; he and his wife are joint tenants, and the doctrine of survivorship applies. *Barber* v. *Babel*, 36 Cal. 14.

2d. It appears from the record that no question is raised as to the regularity of the proceedings in the probate court. The appellants simply claim that Mrs. Chadwick, having elected to take under the will of her husband, was not entitled to have a homestead set apart to her, the will not devising same to her, or that if set apart it should be charged to her interest in the estate and the value thereof deducted from her interest. See Record, pages 1 and 2. This being the only issue, it is unnecessary to answer the argument of appellants' counsel with reference to the different kind of homesteads, or the power to set apart homesteads, where none has been set apart during the life-time of the parties, etc.

3d. We submit the following points with reference to the homestead:

It is so regarded as the property of the wife that even during the life of the husband she may sue alone for the purpose of maintaining her right or claim to it. R. S. Mont. p. 42, sec. 7.

It is exempt from execution. R. S. Mont. p. 101, secs. 311, 313, 316.

On the death of the husband, the homestead descends to his widow. R. S. Mont. p. 102, sec. 318.

The homestead must be set apart to the widow by the probate court. R. S. Mont. p. 216, sec. 134, and p. 218, sec. 141.

The husband cannot dispose of the homestead by will. R. S. Mont. p. 271, sec. 436.

It thus appears that upon the death of the husband the homestead is the property of the widow. The probate court is simply charged with the duty of ascertaining what property is in fact the homestead and setting it apart to the owner. This the court did in this case.

4th. But appellants say that the widow, having taken under the will, has made an election by reason of which she is estopped from making a claim of homestead. It is difficult to understand how she has been put to an election.

"Election is an obligation imposed upon a party to choose between two inconsistent or alternative rights or claims, in cases where there is clear intention of the person from whom he derives one that he should not enjoy both. Every case of election, therefore, presupposes a plurality of gifts or rights, with an intention, express or implied, of the party who has a right to control one or both, that one should be a substitute for the other. 2 Story, Jur. sec. 1075.

In the case at bar the will does not provide that the devise to the widow shall be in lieu of all her claims against the estate. See Record, p. 15.

Appellants say that the doctrine of election applicable to devise is equally applicable to homestead. For the purpose of this discussion let the doctrine so apply. Now, under the common law, dower cannot be divested by the provisions of the will, unless the provision be given especially in lieu of dower and be accepted by the widow. *Pickett* v. *Perry*, 6 Am. Dec. 594; *Larrabee* v. *Van Alstyne*, 3 id. 333.

The case of *Etchebone* v. *Auzerais*, 45 Cal. 125, cited by appellants, is not in point. In that case the devise was expressly made "in lieu of what the law may set aside," and made specific reference to the residence. 45 Cal. 122.

In the case at bar the testator had no authority to devise the homestead, and he did not require his wife to give up her homestead in order to the enjoyment of the devise.

The case of *Sulzberger* v. *Sulzberger*, 52 Cal. 385, cited by appellants, is directly in favor of respondents. In that case the court say, emphatically, that the power of testamentary disposition of property is subordinate to the authority conferred upon the probate court to appropriate the property for a homestead for the widow.

*Second.* We proceed now to consider the character of the proceeds of the mining property sold by Mr. Chadwick to Charles A. Broadwater.

1st. The will gave to Mrs. Chadwick all personal property and to the appellants half of all mining claims, and the only question to be determined as to this part of the case

is, what was the *status* of the property or fund in suit at the time of Mr. Chadwick's death.

If personalty, appellants are not entitled to the money in suit, nor would they be in any better position as to this fund if it was realty, for if the latter, the title never passed and they would still own half of the mines.

We hold that the title passed from Chadwick at the time of the execution of the deed, and not at the time of its delivery to the grantees therein named; and if we are correct in this, he did not own it as realty and was not seized of it at his death. This is the test: was he seized of it at his death? The appellants took, by the terms of the will, such and such only as he was seized of at that time.

There is no doubt but the rule is, that the title to property in escrow passes to the grantee at the time of second delivery.

But the rule is equally well settled, that, as in this case, where the grantee dies between the time of the first and second delivery, the title passes at the time of the former. This is absolutely necessary to avoid a defeat of the transaction. Were it otherwise, in such case the title would not pass at all. 3 Washburn on Real Prop. 273; *Ruggles* v. *Lawson*, 7 Am. Dec. 375; *Shirley* v. *Ayers*, 45 id. 546; *Foster* v. *Mansfield*, 37 id. 154 and note; *Wheelright* v. *Wheelright*, 3 id. 66; *Hatch* v. *Hatch*, 6 id. 67; *Jones* v. *Jones*, 16 id. 35 and note; *Gilmore* v. *Whitesides*, 31 id. 567; *Jackson* v. *Rowland*, 22 id. 559; *State Bank* v. *Evans*, 28 id. 400 and note; *Hathaway* v. *Payne*, 34 N. Y. 106, 113; *Brown* v. *Austin*, 35 Barb. 360; *Wilborn* v. *Weaver*, 63 Am. Dec. 241; *County* v. *Am. Em. Co.* 93 U. S. 127.

In the case at bar the testator devised only that real estate of which he should die seized. Record, p. 15.

Suppose, however, a stronger case — that he had devised the real estate owned by him, without adding the conjunctive "and of which I die seized." The provisions of the deed made by testator (Record, p. 17) were wholly inconsistent with the terms and nature of the testamentary dis-

position, and as to the property thereby conveyed such deed operated as a revocation of the will. R. S. Mont. p. 274, sec. 464.

If, as the appellants assert, the title has not yet passed to Broadwater, then, of course, appellants have no interest in this controversy. If the title has passed, it relates back to the life-time of the grantor; the deed was inconsistent with the devise; the proceeds of the sale were personal property, belonging, under the will, to the widow, who is the respondent herein.

Considering that in such case as this the money goes to the heirs, appellants have not shown themselves entitled to it. The respondents and the father of decedent would be the heirs, and it is not shown but what his father is alive. R. S. Mont. p. 382, sec. 534.

GALBRAITH, J. In this record there are two appeals, each from an order affirming the action and judgment of the probate court of Lewis and Clarke county, each of which was rendered upon an agreed statement of facts. These appeals, in our view of the case, may be determined together.

The first of the agreed statements was as follows, viz.: "The petition of Norma D. Chadwick, widow of the said Walter F. Chadwick, deceased, having been filed in said court in the above entitled proceedings, on the 26th day of January, 1886, for a decree setting apart a homestead, upon which a decree was made by the said court on the 9th day of April, 1886, granting the prayer of said petition; and it being claimed by and on the part of said Norma D. Chadwick that she is entitled to the homestead so set apart to her in addition to the devise to her in the will of said Walter F. Chadwick contained; and it being claimed by and on the part of the other devisees mentioned in said will that Norma D. Chadwick, having elected to take under the will, that said homestead, if allowed, should be charged to and made a part of the devise to her in said will con-

tained, on the final distribution of said estate: Now, therefore, it is hereby stipulated and agreed, by and on the part of the several parties interested herein, by their respective attorneys, . . . that on all the records, papers and proceedings heretofore had in reference to the estate of Walter F. Chadwick, deceased, and upon the foregoing facts and statements, said controversy be, and the same is hereby, submitted to the said probate court for its determination upon an argument, at a date to be fixed by the court."

The questions submitted are as follows, viz.: "Whether the said Norma D. Chadwick is entitled to said homestead, and, if so, shall it be in addition to the devise to her in said will contained; or whether said devise to her shall be charged with the said homestead, or the appraised value thereof; all parties hereto waiving any irregularity or failure to appeal from any order made herein relative to the setting apart of said homestead, and all parties reserving the right to appeal from the decision of the said court upon the questions hereby submitted."

The second stipulation and statement of facts was as follows, viz.: "On the 6th day of April, 1882, the said Walter F. Chadwick made and executed his last will and testament, a copy of which is hereto attached, marked 'Exhibit A,' and hereof made a part; that, after the execution of said will, the said W. F. Chadwick made and executed a certain deed, a copy of which is hereto attached, marked 'Exhibit B,' and hereof made a part; and, at or about the same time, the said Walter F. Chadwick and Charles A. Broadwater executed an agreement, a copy of which is hereto attached, marked 'Exhibit C,' and hereof made a part; that said deed and agreement were deposited with and left in the Montana National Bank of Helena, M. T.; that on the 20th day of January, 1885, a statement or agreement, referring to said deed and agreement marked 'B' and 'C,' was made and signed by said W. F. Chadwick and C. A. Broadwater, a copy of which is hereto attached, marked 'Exhibit D,'

and hereof made a part; that on the 18th day of August, 1865, the said Walter F. Chadwick entered into a new and modified agreement concerning said deed with Charles A. Broadwater, a true copy of which is hereto attached, marked 'Exhibit E,' and hereof made a part, which said modified agreement was also deposited in the Montana National Bank of Helena, M. T.; that thereafter, and on the 28th day of September, the said Walter F. Chadwick died; that on the 19th day of October, 1885, the said last will and testament of said Chadwick was duly admitted to probate in the probate court of said county of Lewis and Clarke, in said territory, and forms a part of the record in the matter of said estate, to which reference is hereby made; that on the 31st day of December, 1885, the said Broadwater paid to the executors of the will of said Walter F. Chadwick the sum of $22,500, as provided by said agreement (Exhibit E), for said mining property named and described in said deed, under and pursuant to said agreement (Exhibit E), for the use and benefit of the estate of said Chadwick; that on the said 31st day of December, 1885, and after said payment, the said Montana National Bank delivered to the said Charles A. Broadwater the said deed, in pursuance of said agreement (Exhibit E). It is now claimed on the part of the said Norma D. Chadwick that, under and pursuant to the terms of said will of Walter F. Chadwick, she will be entitled, upon the final distribution of said estate, to the whole of said sum of $22,500 so paid as above stated, as a part of the personal estate of the said Walter F. Chadwick bequeathed to her. It is claimed upon the part of the other devisees named and designated in said will that said sum of $22,500, so paid in after the death of said Walter F. Chadwick, and after the probate of said will, should be considered and treated in the settlement and distribution of the estate of said Chadwick as a part of the real estate and mining property devised by said will, and that it will be distributed as such, upon such final settlement, one-half thereof going to Norma D. Chadwick, and

the remaining one-half thereof to be distributed to the other devisees, share and share alike. Now, therefore, it is hereby stipulated and agreed, by and upon the part of the several parties interested herein, by their respective attorneys, that on all the records, papers and files in the above entitled proceeding, or hereinbefore mentioned or referred to, and upon the foregoing statement of facts, said questions and controversy be, and the same is hereby, submitted to the said probate court for its determination, upon an argument to be made before said court, at a time to be designated by said court, all parties hereto waiving any irregularity herein, either upon this hearing, or upon any and all appeals which may be taken from the decision of said court upon the questions hereby submitted, all parties reserving the right to appeal from said decision. This submission and stipulation is made for the express purpose of obtaining a final determination of the interests and rights of the respective parties in and to the said sum of money, under and by virtue of the terms and provisions of said last will and testament of Walter F. Chadwick, deceased, in advance of the final distribution of said estate, and for the direction of the court and executors in the matter of said estate relative to such distribution. The deed referred to as Exhibit E, as of February 14, 1885, is the same deed bearing date January 20, 1885, of which Exhibit B is a copy. Each party reserves the right to introduce competent oral testimony, or additional documentary evidence, upon any hearing had by virtue hereof. *Dated June 18, 1886.*"

Our first inquiry will be addressed to a consideration of the question of whether or not we have the authority to consider the questions presented. The consideration of the jurisdiction of a court to hear and determine matters in litigation is one which presents itself *in limine*, and it is clear that, if the probate court could not entertain the subject-matter of these petitions, its appellate courts have no such jurisdiction. *People* v. *Durell*, 1 Idaho, 44. Had,

then, the probate court jurisdiction to hear and determine the questions presented? This question was not brought to the attention of the court below, nor to this court, until request was made for its presentation and argument. It will be observed that, in the first of these petitions and statements of facts, the probate court was asked to construe the will of the decedent. The question thereby submitted and to be determined by the probate court was whether or not Norma D. Chadwick, who was the widow of the deceased, is entitled to the homestead, and, if so, whether or not, in view of the provisions of the will, it was the intention of the testator to bequeath it to her, in addition to the other property devised to her in the will, or whether it should be considered as a part of the share devised to her, and therefore that she should be charged with it, or its appraised value. This certainly required a construction of the will. The court was necessarily required, in arriving at its judgment or decree, to look into the will to discover the intention of the testator. We think the construction of this will is within the peculiar province of a court of equity.

In *U. S.* v. *Gillespie*, which was a case in the circuit court of the United States for New Jersey, reported in 9 Fed. Rep. 74, Nixon, J., delivering the opinion of the court, in the course of determining that the case was one in which the court was asked to construe a will, to declare its trusts and cause them to be executed, uses the following language: " The general jurisdiction of courts of chancery over questions of this kind, in the administration of estates, is undoubted, and such jurisdiction must be exercised by this court sitting in equity, when the proper parties appear to invoke it." This was a case, it is true, where the *cestui que trust* asked for the construction of the will, and it may have been for this reason that the court assumed jurisdiction; but in *Rosenberg* v. *Frank*, 58 Cal. 387, it was held, in substance, that " the jurisdiction to construe a will exists and is exercised whenever its terms are really difficult or doubtful, or their validity is contested, without reference to

the presence or absence of any trust." See 3 Pom. Eq. Jur. § 1157; 1 Pom. Eq. Jur. § 346. "The construction of a will, and its force and effect, is a proper question to be determined by a court of equity." 3 Redf. Wills, 60.

In the second petition the question presented to the probate court was whether or not the property therein specified was, for the purpose of its distribution under the will, real estate or personal property, as under the terms of the will it was to be distributed differently, according to which of the above classes of property it belonged. But the determination of this question was also within the domain of equity jurisdiction. The inquiry as to whether or not this was to be deemed to be real estate or personal property, for the purpose of distribution, according to the provisions of the will, should be addressed to a court of chancery.

To authorize the probate court, therefore, to entertain both or either of the foregoing petitions, required the possession by it of chancery powers. It must be a court of equity. Is it such a court? The answer to this question depends upon the proper construction of the law of congress, or what is generally known as the organic act, instituting this court. The following is the provision of this act, so far as it relates to the jurisdiction of the probate court: "The probate courts of the territory of Montana, in their respective counties, in addition to their probate jurisdiction, are authorized to hear and determine civil causes wherein the damage or debt claimed does not exceed $500, and such criminal cases arising under the laws of the territory as do not require the intervention of a grand jury; but they shall not have jurisdiction of any matter in controversy when the title or right to the peaceable possession of land may be in dispute, or of chancery or divorce cases; and in all cases an appeal may be taken from any order, judgment or decree of the probate courts to the district court." R. S. U. S. § 1932. This provision is applicable only to the territory of Montana. Another provision common to all the territories reads as follows:

"The supreme court and the district courts, respectively, of every territory, shall possess chancery, as well as common law, jurisdiction." U. S. R. S. § 1868. By probate jurisdiction in section 1932 is meant the exercise of the ordinary power of what, *ex vi termini,* is generally understood to be the authority of courts of that name. They derive their origin from the ecclesiastical courts of England, and this fact suggests the character of their powers. Unless otherwise regulated by statute, they have a special mode of procedure, and are subject to rules that had their origin in the ecclesiastical courts, and issues of fact are not tried by jury. Although they do not proceed according to the rules of the common law of England and this country, yet they are recognized by it, and their jurisdiction is as well defined and understood as is that of our other courts of law and equity. Their powers are limited, unless extended by statute, and are confined to the establishment of wills, the settlement and management, or, in other words, administration, of decedents' estates, the supervision of the guardianship of infants, the control of their property, the allotment of dower, and other powers pertaining to the same general subject.

This is the character of powers recognized by the term "probate jurisdiction," as used in the foregoing act of congress. *Ferris* v. *Higley,* 20 Wall. 375; *Mayberry* v. *Kelley,* 1 Kan. 116; *People* v. *Durell,* 1 Idaho, 44; *Moore* v. *Koubly,* id. 55. These powers can only be extended by competent legislation. As bearing upon this subject, we quote from Carey's Probate Law, § 624, in speaking of the jurisdiction of probate courts as affected by legislation: "And as this determination of the rights of parties in an estate, disposed of by will, necessarily involves a construction of the will, it seems that probate courts, under such statutes, are (as no probate courts ever were before) courts of construction as to wills, of real as well as personal property, and may exercise the jurisdiction as fully as a court of equity, and decree a trust in the property of the estate upon equitable princi-

ples." The citations are to the decisions of the supreme court of Wisconsin, in which state the equitable jurisdiction referred to exists by virtue of statute.

We think that the above provisions of the acts of congress, one of which expressly confers chancery jurisdiction upon the supreme and district courts, and the other of which prohibits its exercise by the probate courts, leave no doubt as to where the only right to exercise such jurisdiction exists, viz., in the supreme and district courts of the territory. But even if these petitions did not come within the jurisdiction of a court of equity, nevertheless they are plainly not cognizable by the probate courts by virtue of the civil jurisdiction conferred by the foregoing act of congress. Their powers are limited by its provisions, and they can exercise none other. The constitution of the United States and the laws of congress are the fundamental law of the territory, and no legislation which contravenes or is inconsistent with them is of any validity. The probate court of Lewis and Clarke county had no power or authority to entertain the above petitions, nor could the district court upon appeal therefrom, nor this court upon appeal from the district court.

The judgment is reversed and the proceedings dismissed.

*Judgment reversed.*

McLeary, J., and Bach, J., concur.