Mayberry and others *v.* Kelly.

WILLIAM H. MAYBERRY, A. D. GRAHAM, E. B. KIRKENDALL and WESLEY PEARSON *vs.* NORVAL H. KELLY.

Where a petition in the Court below shows that in September, 1858, Kelly, defendant below, was arrested by Kirkendall, sheriff of Madison county, under a warrant issued on the affidavit of Mayberry, by Graham, Probate Judge of that county, and taken from his dwelling, in Breckinridge county, and placed in charge of Pearson, deputy sheriff under Kirkendall, and was thus detained seven days, and that said persons " caused the same to be done unlawfully, and then and there imprisoned the plaintiff (below) and kept and detained him in prison there, without any reasonable or probable cause whatever, for a long space of time," and where copies of the affidavit, warrant and sheriff's return are made part of the petition as being all the proceedings in the case, *held* that a joint demurrer by the defendants, (below,) on the ground that " petition did not state facts sufficient to constitute a cause of action," was properly overruled.

In such a case the defendants must show affirmatively, not only a justification for the arrest, but the causes for the continued imprisonment.

Where an inferior court has jurisdiction of the subject matter, but is bound to adopt certain forms in its proceedings, from which it deviates, to the injury of a party, he has remedy by action against all those who participated in the injury.

A demurrer is a pleading, as now used, created by the Code, and can only be used when it appears on the face of the pleading demurred to, that one of the six causes exists, designated in the Code.

Mayberry and others *v.* Kelly.

An allegation in a demurrer "that the petition does not state that the alleged imprisonment and the wrongs and injuries said to have been done him at the same time and place, were done without authority of law or unlawfully," *held* not to be one of the causes provided for in the Code, and can and must be regarded only as an objection that the petition does not state sufficient facts.

It is as much the duty of inferior courts, as of any other tribunal, to pass upon and determine the constitutionality of statutes, and to construe apparently conflicting laws, and decide which of the two shall prevail.

When an instruction, partly good law and partly bad, is asked as an entirety, the Court may refuse the instruction prayed for, or better, give so much of it as would be unobjectionable.

A full statement of the case appears in the opinion of the Court.

*Wilson Shannon,* for plaintiffs in error.

The error complained of in this record is in the Court overruling the demurrer and in refusing to give the instructions set forth in the record. The same question is raised on the demurrer that is presented in the instructions that were refused.

By the sixth section of the Probate Court act of 1855, page two hundred and twenty-seven, the Probate Court is made a court of record.

The first section of the third article of the act of Criminal Procedure, passed February 12th, 1858, page one hundred and seventy-one, gives the Judges of the several Courts of record and Justices of the Peace jurisdiction to apprehend persons charged with offenses.

The assault, or arrest, complained of, is alleged to have taken place on the 10th of September, 1858. By the act for the punishment of crimes, passed in 1855, (which was in force at this time,) pages two hundred and forty-two and two hundred and forty-three, sections thirty-four and thirty-seven, makes an assault and battery with intent to kill, an offense. The law, therefore, at the time the Probate Judge issued the warrant, gave him the right to do so. So far as the legisla-

tive enactments are concerned, the Probate Judge had juris-diction. But it is claimed that the statute giving the Probate Judge jurisdiction in criminal cases to arrest, is void, for the reason, that by the organic act the Legislature had no power to confer such jurisdiction on the Probate Judge.

As the Legislature of the Territory expressly gave to the Probate Court jurisdiction in cases of this kind, and that in pursuance of the express provisions of the statute law, he issued the warrant in this case to Kirkendall, the sheriff; that the Probate Judge is justified in issuing the warrant, and the sheriff, and all acting under him, are protected by it.

It is not the province of inferior courts — such as Justices' and Probate Courts—to decide on the constitu-tionality of a law, and much less is it the province of mere ministerial officers to do so. If there had been no act of the Legislature giving to the Probate Court jurisdiction it would have presented a very different question. All officers of the law, whether judicial or ministerial, or inferior, or superior, are bound to know whether a law exists or not. But when a law does exist, inferior courts and ministerial officers are not bound to know whether it is constitutional or not. A con-trary doctrine would require the sheriff—a mere ministerial officer—to decide and pass upon the constitutionality of a law passed by the wisdom of the Legislature. And yet if he is to be made liable in damages if he acts under an uncon-stitutional law, he must necessarily have the right to pass upon its constitutionality in order to avoid damages. Even the highest judicial tribunals of the country, for a long time, hesitated to decide a law unconstitutional. Different judges decided this question in different ways; the weight of authority, however, being in favor of the right of the Court to pronounce a law unconstitutional, and therefore not binding.

But no Court ever supposed, for a moment, that a consta-

Mayberry and others *v.* Kelly.

ble, or sheriff, or other ministerial officer possesed such right.

At length Chief Justice Marshall, in the case of *Marberry vs. Madison,* (1 *Cranch,* 137,) gave such a clear and forcible opinion in favor of the right of the judges to declare an act of the law-making power unconstitutional and void, that the courts have since followed that decision, and it may be considered the settled law in America, so far as the higher Courts are concerned. I cannot do better than to call the attention of the Court to the remarks of Chancellor Kent on this subject, which will be found in volume first of his Commentaries, pages four hundred and forty-seven, four hundred and forty-eight, four hundred and forty-nine and four hundred and fifty.

This question never could have arisen in England, or in any country where they have no written constitution. In England, Parliament is omnipotent, and when their will is clearly expressed in a law, the courts, and all officers of the government, as well as the people, are bound by it. But in our country it is very different. Here we have written constitutions, and it occasionally happens that the laws passed are in conflict with the constitution. In such cases it is the duty of the superior courts to determine how far the statute law is void, and not the business of sheriffs and constables.

The most difficult questions presented to our courts for determination are frequently constitutional questions, and it not unfrequently happens, that the ablest judges' differ in opinion—one holding that a law is, and the other, equally learned, holding that it is not constitutional. How absurd it would be to require an inferior court, having no pretensions to equal learning, or a sheriff or constable, to pass on grave and difficult constitutional questions.

It is well settled that all acts done under a void process are illegal; but what is a void process? Process issued in pursuance to a law passed by the Legislature cannot be con-

sidered, so far as those acting under it are concerned, as void. If the process is merely voidable, it is well settled that it will protect those acting under it.    Was the warrant issued in this case by the Probate Judge, *void* or *voidable?*    If void, it is no protection.    If voidable, it is  an  ample protection to the sheriff and those aiding and assisting him,  or acting under him.   A process may be void so far as the parties originating and issuing the same are concerned, while at the same time it may be a good precept for the officer serving it.   (*See the case of The State vs. Weed,* 1 *Fosters N. H. R.* 262, *reported in Livington's Law Magazine, Feb. No.,* 1853, *Vol.* 1, *No.* 2, *pp.* 97, 98.)

But I deny that the law giving  the Probate Court jurisdiction, is in violation of the  organic act, and should the Court reach this point in the case,  I  ask  them to  decide this question.

The twenty-fourth section of the organic act gives to the Territorial Legislature full  power to  legislate on all rightful subjects of legislation.

The twenty-seventh section provides that the  "jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts,  and of justices of the peace, shall be as limited by law; *provided,* that justices of the peace shall not have  jurisdiction of any matter in controversy, where the title or  boundaries of land may be in dispute, or where the debt or  sum  claimed shall exceed one hundred dollars; and the said Supreme Court and District Court, respectively, shall possess chancery as well as common law jurisdiction."    This section marks out certain boundaries of jurisdiction for the several courts named, and the Legislature cannot either give or  take away  jurisdiction, so far as jurisdiction is given, restricted or taken away.    But within these outlines and limitations I can  see no reason why the Legislature of the Territory had not full power to confer jurisdiction, or modify it, as they deemed best for the public

Mayberry and others *v.* Kelly.

interest, so far as the Probate Court was concerned. Does the act making the Probate Court a court of record, and giving to courts of record jurisdiction to issue warrants for the arrest of offenders, in any way interfere with any one of the provisions of the above section? If so, I am wholly unable to see it; and if they do not, why are not those acts within the Legislature's power to pass? But it is not my intention to submit an extended argument on this subject. I cannot suppose that the Court will ever reach this point in the case.

I claim, therefore,—

I. That at the time the warrant was issued by the Probate Judge and served by the sheriff, that no decision had been made by the Supreme Court, or any superior court of the Territory, which would, under the laws under which the warrant was issued, be a nullity, on the ground that they violated the organic act, and that under such circumstances those laws were a protection to the Probate Judge who issued the warrant, and to the sheriff and those acting under him, and that the Court ought to have charged the jury, and having failed to do so, the Court erred.

II. That if the warrant was void, as to the Probate Judge, it was only voidable as to the sheriff, and if only voidable, it was a protection to the sheriff, and that the Court erred in not so charging the jury.

III. That the law giving the Probate Judge the right to issue warrants for the arrest of offenders, was not in violation of the organic act, and that consequently the warrant issued by him in this case was legal, and furnished a protection to all the defendants in the Court below, and that the Court erred in not so charging the jury.

No counsel for defense.

By the Court, KINGMAN, J. This is an action for damages for false imprisonment, tried at the September term, 1860, of

the District Court sitting in Breckinridge county, where it had been taken, by change of venue, from Madison county.

Two points are presented by the petition in error.

The first is on the overruling of the demurrer to the petition.

The second, the refusal of the Court to give the instructions asked by the plaintiffs in error.

In the argument, it was claimed for plaintiffs in error that the same questions were raised by both causes of error, but as we have come to a different conclusion, they will be considered separately.

The petition contains the usual averments, from which it appears that in September, 1858, Allen D. Graham, Judge of the Probate Court of Madison county, issued his warrant directing the sheriff of that county to arrest Kelly on a charge of assault and battery with intent to kill. The warrant was issued on the affidavit of William H. Mayberry. Upon this warrant, Kelly was arrested and taken from his dwelling house, in Breckinridge county, and placed in charge of Pearson, deputy sheriff under Kirkendall, in Madison county, and was there detained seven days. After stating these facts, the petition avers that "the said William H. Mayberry, Allen D. Graham, Elijah Kirkendall and Wesley Pearson caused the same to be done unlawfully, and then and there imprisoned him and kept and detained him in prison here without any reasonable or probable cause whatsoever,(because said Probate Court of Madison county had no jurisdiction of the subject matter,) for a long space of time, to wit: for the space of seven days," &c.

Copies of the affidavit, warrant and sheriff's return are made part of the petition as being all the proceedings of the Probate Court in the case.

A joint demurrer is filed by all the defendants, setting up two causes :

Mayberry and others *v.* Kelly.

First.  The petition does not state that the alleged imprisonment and the wrongs and injuries said to have been done him at the same time and place, were done without authority of law, or unlawfully.

Second.  The facts set forth in plaintiffs' petition are not sufficient to constitute a cause of action.

A demurrer is a pleading, as now used, created by the Code, and can only be used when it appears on the face of the pleading demurred to, that one of the six causes exist designated by the Code.  The first cause of demurrer set up, is not one provided for in the Code, and could, at most, only be regarded as objecting that the petition does not state facts' sufficient to constitute a cause of action, which is the same as the second cause of demurrer.

It is claimed that the defendants below were justified in their acts, by process duly and lawfully issued from the Probate Court, and that this appears from the petition and the papers filed, as part of it.  The only papers filed as part of the petition, are the affidavit, warrant and sheriff's return, and these are declared to be all the papers in the case.  There is no examination of the accused—no order postponing the examination of the cause, and no showing that Kelly was remanded to the custody of the sheriff when brought before the Probate Judge.  Nothing showing for what cause he was detained seven days in prison, and then left to go without either discharge or commitment; and yet the defendant admits, by his demurrer, that all this is true.  If properly pleaded, the warrant would have been a sufficient protection to Kirkendall and Pearson for the arrest of Kelly, provided the Probate Court had jurisdiction of the case, and the affidavit of Mayberry fully authorized a magistrate to issue a warrant for the arrest of Kelly.

It is not necessary to inquire whether the Probate Court had jurisdiction, because if that were admitted, there is nothing in the petition showing that the continued imprisonment for seven days was lawful.

There are certain causes known to the law for postponing the examination of a person charged with a criminal offense, meantime keeping the accused in custody by mittimus, but when sued for false imprisonment, the defendants must show affirmatively, not only a justification for the arrest, but the causes for the continued imprisonment, otherwise the arrest being legal, a party might be imprisoned indefinitely, without examination, and have no remedy against those detaining him in custody. No cause for the continued imprisonment appears in the petition, and of this trespass all the plaintiffs in error are charged as being guilty.

When an inferior court has jurisdiction of the subject matter, but is bound to adopt certain forms in its proceedings, from which it deviates, to the injury of the party, he has his remedy by action against all those who participated in the injury. (1 *Chitty Pl.*, 182.)

The demurrer was properly overruled.

The other error assigned, is in the refusal of the Court to give the following instructions to the jury:

" The judges of a local or inferior court of a State or Territory, the ministerial officers of such Court, and those who act under them as deputies in the execution of the laws enacted by the Legislature of such State or Territory, are protected by the judicial policy of the law against any claim of damage which may accrue or result to individuals from the proper execution of the laws so enacted, and such protection subsists in favor of such judge and ministerial officers of the said Courts for all official acts done strictly in pursuance of the provisions of such enactments, prior to the declaration of a competent judicial tribunal touching the validity of such enactment."

The record shows none of the evidence in the case, nor what instructions were given by the Court, so that we are not able to say that the instruction asked for had any relevancy to the testimony, and as the answer was a joint one of not

Mayberry and others *v.* Kelly.

guilty, we do not see what application, under the issue as formed, the instruction asked could have had to any testimony.

It is claimed by counsel for plaintiffs in error, that the point raised by the instruction is that inferior courts, and ministerial officers have no right to judge of the constitutionality of a law passed by a Legislature. Such is undoubtedly the object of the instruction. But is this law?· If so, a court created to interpret the law must disregard the constitution in forming its opinions. The constitution is law—the fundamental law—and must as much be taken into consideration by a justice of the peace as any other tribunal. Where two laws apparently conflict, it is the duty of all courts to construe them. If the conflict is irreconcilable, they must decide which is to prevail, and the constitution is not an exception to this rule of construction. If a law were passed in open flagrant violation of the constitution, should a justice of the peace regard the law and pay no attention to the constitutional provision? If that is his duty in a plain case, is it less so when the construction becomes more difficult? If an inferior court was incapable, in law, of passing upon the constitutionality of the organic law, as well as legislative enactments, there would be no way to reach many such cases by superior courts.

Such enactments may protect ministerial officers. Their protection is the process they have, but the courts have none but the law. It seems to the Court that part of the instructions asked were good law, and part bad; but it appears to have been asked as an entirety, and though it might be better to give so much of it as would be unobjectionable, the Court is not bound to do so, but may simply refuse the instructions prayed. (*Walker vs. Devlin's Lessees,* 2 *Ohio S. R.* 593.)

The judgment below is affirmed, and a mandate will be sent to the Court below, directing that the judgment be carried into effect. Judgment is given here for costs against the plaintiffs in error, and execution awarded.