No. 56,588

Lorraine Alvarado, *Appellant,* v. The City of Dodge City, Kansas, a Municipal Corporation; Alco Discount Stores, a Corporation; and Robert Fox, *Appellees.*

(708 P.2d 174)

Opinion filed October 25, 1985.

*Donald E. Shultz,* of Shultz & Associates, P.A., of Dodge City, argued the cause and was on the brief for appellant.

*B.G. Larson,* of Williams, Larson, Strobel, Estes & Malone, of Dodge City, argued the cause, and *Terry J. Malone,* of the same firm, was with him on the briefs for appellees Alco Discount Stores and Robert Fox.

*Robert Allen Anderson,* of Great Bend, argued the cause, and *Hannelore Kitts* and *Casey R. Law,* of Turner and Boisseau, Chartered, of Great Bend, were on the brief for appellee city of Dodge City.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the plaintiff, Lorraine Alvarado, to recover damages for false arrest, assault, defamation, and violation of civil rights under 42 U.S.C. § 1983 (1982). The case was submitted to a jury which brought in a verdict in favor of the defendants. Plaintiff appealed to the Court of Appeals which reversed and remanded the case for a new trial (*Alvarado v. City of Dodge City,* 10 Kan. App. 2d 363, 702 P.2d 935 [1985]). The defendants Alco Discount Stores and Robert Fox then filed a petition for review which was granted by the Supreme Court.

The plaintiff's claim arose as a result of her detention as a suspected shoplifter at the Alco Discount Store in Dodge City on January 16, 1982, by Robert Fox, an off-duty police officer, who at the time was working as a security guard at Alco. The facts in the case were disputed.

The plaintiff's evidence was essentially as follows: On Saturday, January 16, 1982, the plaintiff, Lorraine Alvarado, a 35-year-old Hispanic woman, was shopping at the Alco store in Dodge City. She was accompanied by her sister, Barbara Garcia. After entering the store, she shopped for approximately two hours, during which period plaintiff purchased a pair of ladies shoes, a pair of children's shoes, a pair of pajamas, and some flashlight batteries for her husband. After making those selections, she went to the checkout stand at the front of the store with the articles and paid cash for the same. Following the practice of

the store, her shopping bag was stapled shut at the top with the sales ticket on the upper corner. The evidence was undisputed that plaintiff paid for each and every item selected and that she was not a shoplifter.

After plaintiff went through Alco's checkout stand, she left the store with the items purchased. She was outside the store in the direction of the parking lot when she was approached by Fox, who asked her to return to the store. According to the plaintiff, she asked him why, and he told her, "We have proof you stole the shoes you are wearing." He asked her to return to the store, and she refused, stating that she didn't steal them but had paid for them. Fox then announced to her that, if she did not return to the store voluntarily, he would have to use force and place her under arrest, and he showed her his police badge. Plaintiff testified she used profanity, calling him a damned liar. Officer Fox then said for her to consider herself under arrest, took hold of her left arm, and forced her back toward the door. She then agreed to return on her own if he would let go of her, which he did.

She was walked the length of the public portion of the store to a table in the storage area in the rear. There Fox demanded that she remove her shoes, and she did. Officer Fox showed the shoes to one of the clerks, Tana Freel, who stated to Fox that she did not get those shoes there. Officer Fox then told the clerk to check anyway. Tana Freel and another clerk each took a shoe and checked the entire ladies shoe display and found nothing re-sembling those shoes. Tana Freel also stated the shoes were obviously worn and not new. The clerk then returned to the back room and informed Officer Fox that the shoes did not come from the store. While Tana was checking the shoes, Officer Fox requested plaintiff to open her shopping bag, which was stapled shut. She refused, telling him if he wanted it open, he would have to open it himself. Officer Fox tore the bag open and found a new pair of ladies shoes and the various items mentioned above which he carefully checked against the register ticket. Fox then requested that she empty out her purse, and she refused, stating he would have to do it himself. Fox then proceeded to search through her purse, finding nothing incriminating. The plaintiff estimated that 25 to 30 minutes elapsed between her arrest and her release. Officer Fox prepared and filed an arrest

report for the city police department and also a report for Alco. After Fox had completed his search of her purse and had been advised that the shoes had not been purchased at the store, he told the plaintiff, "I guess I made a mistake." Shortly thereafter, her husband arrived to find out what the trouble was. Plaintiff then left the store.

The defendant Fox had a different version of what occurred. He testified that he first observed the plaintiff and her sister standing in the center aisle by some shoes that were on sale. The plaintiff stood there for approximately five minutes holding the shoes in her hand and turning them over and over and looking around. He thought that that appeared to be somewhat unusual. He then saw them leave the area and go to a more concealed area of the store. He saw plaintiff picking at the price tag on the pair of shoes and then saw her bend down and put a shoe on her foot. He saw her leave that area of the store. Fox then went to the area where she had been standing and found an Alco sales tag lying on the floor. Fox then went to the service counter and asked the clerk if the sales tag was like the ones on the shoes in the center aisle. He was advised by the clerk that she thought so. The sales tag, which was admitted into evidence, was in the amount of $2. Fox testified that he observed the plaintiff walking around the store wearing either slacks or a dress which covered up the shoes she was wearing. He saw her go through the checkout counter. Fox admitted he never called the store's office to check the number on the tag to see if it was from the ladies shoe department, and further admitted that he never checked with the cashier to see what items plaintiff had paid for. At this point, Fox said he reasonably believed Mrs. Alvarado to be a shoplifter and, therefore, followed her out the door.

Fox also had a different version of what happened outside of the store on the way to the parking lot. According to Fox, he called to Mrs. Alvarado and told her that he suspected her of taking the shoes that she was wearing, or that she had been wearing. He asked her to come back into the store and she refused, stating that he would have to arrest her. He then placed her under arrest and took her back into the store. He admitted taking hold of her arm. They then proceeded back into the store and he had the clerks check the shoes which were found not to be shoes purchased from the store. He admitted searching her

shopping bag and her purse. It was his judgment that he detained the plaintiff for a total of ten minutes. According to Fox, he told plaintiff that he had made a mistake and was sorry. On the arrest report, Fox stated that he had "unarrested" Mrs. Alvarado.

The plaintiff called her sister, Barbara Garcia, to the stand. She testified on cross-examination that after she and her sister walked out of the store, Officer Fox said "Ma'am" in a normal voice. Fox asked her sister twice if she would cooperate and go back in the store and finally said, "If you will not cooperate, I will have to arrest you." At that point, Mrs. Alvarado said he would have to arrest her. Fox then arrested her and took her back in the store. Ms. Garcia testified that the whole incident took about ten to fifteen minutes.

As noted above, the plaintiff raises four claims against the three defendants: False imprisonment, assault and battery, defamation, and violation of her civil rights under 42 U.S.C. § 1983. The city moved for summary judgment on the civil rights claim, and the trial court granted summary judgment on that claim in favor of all three defendants without making any findings of fact or conclusions of law. The trial court dismissed all other claims against the city of Dodge City before trial. The false imprisonment, assault and battery, and defamation claims against Fox and Alco were then tried to a jury. The jury found for the defendants, and the court entered judgment accordingly. The plaintiff appealed.

The first point raised on the appeal is that the trial court erred in granting summary judgment and dismissing plaintiff's civil rights claim against all of the defendants. Her action was based on 42 U.S.C. § 1983, which provides in part as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The Court of Appeals held that the trial court erred in dismissing the civil rights claim as against defendant Fox but not as against defendants Alco and the city of Dodge City. The court stated that there are two essential elements to a civil rights claim under that statute: "(1) that the conduct complained of was committed by a person acting under color of state law, and (2)

that the conduct deprived a person of rights, privileges or immunities secured by the Constitution and laws of the United States." 10 Kan. App. 2d at 366.

The Court of Appeals concluded, and in our judgment correctly so, that Fox, as an off-duty police officer working as a private security guard, acted under color of state law when he detained plaintiff as a suspected shoplifter, displayed his police badge, told plaintiff she was under arrest, and later filed an arrest report with the police department. The Court of Appeals also concluded that, in restraining and searching plaintiff, Fox's conduct, if tortious, deprived plaintiff of rights, privileges, or immunities secured by the Constitution and the laws of the United States. It has been held that arrest and search without probable cause may be grounds for a civil rights claim under 42 U.S.C. § 1983. *Monroe v. Pape*, 365 U.S. 167, 5 L.Ed.2d 492, 81 S.Ct. 473 (1961), *overruled on other grounds, Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978).

Standing alone, however, these elements do not establish a § 1983 claim for violation of due process under the Fourteenth Amendment to the United States Constitution. In *Parratt v. Taylor*, 451 U.S. 527, 537, 68 L.Ed. 2d 420, 101 S.Ct. 1908 (1981), it was held that the Fourteenth Amendment protects only against deprivations "without due process of law" and that nothing in the Fourteenth Amendment protects against *all* deprivations of life, liberty, or property by the State. The *Parratt* court held that when a state provides an adequate remedy in tort for a negligent deprivation of property, that remedy itself constitutes the due process required by the Fourteenth Amendment. p. 544. The scope and application of the *Parratt* holding has perplexed the federal district and circuit courts. See, *e.g., Gilmere v. City of Atlanta, Ga.*, 737 F.2d 894 (11th Cir. 1984); *Guenther v. Holmgreen*, 738 F.2d 879 (7th Cir. 1984); *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984).

Since *Parratt*, the federal courts have addressed the issue whether particular state tort remedies, provided as a means of redress for property *or liberty* deprivations, satisfied the requirements of due process. The Supreme Court stated in *Parratt* that a postdeprivation remedy will not suffice if the deprivation was pursuant to some established state procedure and a mean-

ingful predeprivation process could be afforded before any actual deprivation took place. The Supreme Court held, however, that a postdeprivation remedy can satisfy due process when provision for predeprivation process is impracticable and the postdeprivation remedy is afforded at a meaningful time and in a meaningful manner. An adequate postdeprivation remedy will suffice if the deprivation is caused by a random and unauthorized state act for which prior process is impracticable or impossible.

In the recent case of *Hanson v. Larkin*, 605 F.Supp. 1020 (D. Minn. 1985), the plaintiff brought an action pursuant to 42 U.S.C. § 1983 for deprivation of his civil rights arising out of an alleged battery and false arrest suffered by him at the hands of a police officer. Although the police officer was not on duty at the time, he was in full uniform and working as a security guard at a beer garden. The plaintiff, Hanson, was arrested and struck in the forehead with a flashlight. The plaintiff then brought an action for deprivation of his civil rights. The court in *Hanson* held that when a state provides an adequate postdeprivation remedy in tort for an unauthorized deprivation, whether intentional or negligent, of a property or liberty interest, that remedy itself constitutes the due process required by the Fourteenth Amendment. The controlling question is whether the state can provide a meaningful predeprivation hearing, which due process requires where the state is able to provide such a hearing. The court concluded that when deprivation of a property or liberty interest results from a random and unauthorized act by a state official, the state is simply unable to provide a meaningful predeprivation hearing, and, in such case, due process can only be satisfied through a meaningful postdeprivation hearing. The court then concluded that Minnesota tort law provided an adequate postdeprivation remedy by a cause of action in tort for false arrest and battery. Therefore, the plaintiff had no § 1983 claim against the police officer or the city. For a similar holding see *Barnier v. Szentmiklosi*, 565 F.Supp. 869 (E.D. Mich. 1983).

Although the issue was not raised in *Miller v. City of Overland Park,* 231 Kan. 557, 562, 646 P.2d 1114 (1982), this court, in an action brought to recover damages for false arrest, stated that there may be no basis for a due process civil rights action under § 1983 when an adequate remedy is provided by state law. The

court cited *Parratt v. Taylor.* It should be noted that the federal cases are not in agreement on this issue, some of the cases holding that where a *liberty* interest is involved, the availability of a state tort remedy does not deprive a plaintiff of his right to bring a civil action under § 1983 for a violation of his civil rights. In those cases some courts distinguish between liberty rights and property rights. See *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423.

We have concluded that under the factual circumstances shown in this case, the Kansas tort actions for false imprisonment, battery, and defamation provide an adequate postdeprivation remedy sufficient to satisfy the requirements of due process under the Fourteenth Amendment. Clearly in this case, any deprivation of a liberty interest of the plaintiff resulted from a random and unauthorized act by an off-duty police officer and there is no way that the State could have provided a meaningful predeprivation hearing. Hence, due process can be satisfied through a meaningful postdeprivation hearing. We hold that the trial court properly dismissed the civil rights claim of the plaintiff against the defendant Fox. The Court of Appeals erred in holding to the contrary.

As to the plaintiff's civil rights claim against the city of Dodge City, the Court of Appeals held that the trial court did not err in dismissing that claim for the reason that a local government cannot be held liable for civil rights violations of its agents under a respondeat superior theory. Local governments are liable only when execution of a government policy or custom inflicts the injury. *Monell v. New York City Dept. of Social Services*, 436 U.S. at 660-64. In this case, the plaintiff alleged only that Fox was a police officer employed by the city and did not allege that Fox was following a city policy or custom. The Court of Appeals noted that the summary judgment record contained nothing to support the existence of a city policy or custom. We affirm the Court of Appeals in its holding that the trial court did not err in entering summary judgment in favor of the city. We also agree with the Court of Appeals that the district court did not err in granting summary judgment on plaintiff's civil rights claim against Alco. The record here shows that Alco did nothing more than hire Fox as a security guard. There is nothing indicating that

Alco authorized, encouraged, or approved any illegal actions on his part.

Another point raised by the plaintiff on the appeal is that the trial court erred in instructing the jury on a merchant's right to detain a suspected shoplifter under K.S.A. 21-3424 where an actual arrest was admitted. In order to put this issue in proper perspective, it would be helpful at the outset to review some of the basic principles of law pertaining to this subject and the effect of the merchant's defense in civil actions seeking to recover damages for false imprisonment. At common law, if a person observed another relieving him of his belongings, he was permitted to use reasonable force to retake the goods. However, there was no room for mistake, and if one was made and the dispossessed person could not prove that the party he had detained had actually taken his belongings, any detention of the suspected thief was not justified and the detaining party would be subject to liability in an action for false imprisonment. Thus, the merchant of days past, who owned a small shop and kept all of his goods stacked on shelves behind him or in a counter between him and his customers, may have been adequately protected by the common-law rule, because there could be no doubt in his mind when someone was stealing from him. That situation changed, however, when modern methods of marketing goods came into existence. In modern department stores or supermarkets, where nearly all of the goods are on open shelves within reach of the customer, and where the shopper is expected to pick up and examine the goods before purchasing them, it is difficult for a merchant to be sure, even under apparently obvious circumstances, that a particular customer is pilfering from the shelves. Under these circumstances, the common-law rule did not work. Annot., 47 A.L.R.3d 998.

In the late 1950's, the need for a change in the law became clear. Several courts recognized the problem and adopted a rule that a merchant should have the right to detain a person who he has reasonable cause to believe is shoplifting. This rule was later embodied in Restatement (Second) of Torts § 120A (1965), which states as follows:

"§ 120 A. Temporary Detention for Investigation

'One who reasonably believes that another has tortiously taken a chattel upon his premises, or has failed to make due cash payment for a chattel purchased or services rendered there, is privileged, without arresting the other, to detain him on the premises for the time necessary for a reasonable investigation of the facts.'"

In comment a to this section, it is stated:

"The privilege stated in this Section is necessary for the protection of a shopkeeper against the dilemma in which he would otherwise find himself when he reasonably believes that a shoplifter has taken goods from his counter. If there were no such privilege, he must either permit the suspected person to walk out of the premises and disappear, or must arrest him, at the risk of liability for false arrest if the theft could not be proved."

In addition to court decisions, many state legislatures recognized the need for a change in the common-law rule by enacting statutes specifically giving a merchant a qualified privilege to detain suspected shoplifters. The various state statutes vary somewhat in form but they all are consistent in providing that merchants or their employees or agents may detain in good faith and upon probable cause or reasonable grounds any person who it is believed was removing goods for sale from the store without paying for them, provided that such detention is for a reasonable time and is conducted in a reasonable manner. These statutes usually expressly provide that probable cause or reasonable grounds for the detention will be a valid defense to any suit for false imprisonment or false arrest arising therefrom, assuming that the accused was detained for a reasonable time and in a reasonable manner. The fact that under the statute the merchant can act upon probable cause or reasonable grounds leaves room for honest mistake. Under these statutes, the question of whether the merchant or his employee had reasonable grounds or probable cause for the detention of the suspected shoplifter is the issue most frequently arising in false arrest cases involving suspected shoplifters. The State of Kansas adopted such a statute in 1959, which will be discussed later.

Since the beginning of statehood, the courts of Kansas have recognized a right of action for false arrest. The earliest Kansas case on the subject was handed down in February of 1862 in the case of *Mayberry and others v. Kelly,* 1 Kan. 116 (1862). Then, in *Prell v. M'Donald,* 7 Kan. *426 (1871), it was held that when an officer arrests a person without authority or exceeds his authority, he is liable to the party injured, whether the officer acted maliciously or in good faith. This was the common-law rule mentioned above. Cases through the years have continued to recognize this cause of action. *Torson v. Baehni,* 134 Kan. 188, 5

P.2d 813 (1931); *Garnier v. Squires,* 62 Kan. 321, 62 Pac. 1005 (1900).

A case involving the unlawful detention of a suspected shoplifter was *Lewis v. Montgomery Ward & Co.,* 144 Kan. 656, 62 P.2d 875 (1936). An agent of defendant Montgomery Ward followed the plaintiff out of the store, believing that she had put two baby dresses in her shopping bag and not paid for them. The agent took her shopping bag and tore it open, and not finding the dresses, inquired in a loud voice where the baby dresses were that she took from the store. Twelve minutes later it was found that she was innocent and she was released. Plaintiff brought an action seeking to recover damages stating that she had been unlawfully detained from seven to twelve minutes by force. Defendant Montgomery Ward was held liable to plaintiff for damages for the acts of its agent. *Hammargren v. Montgomery Ward & Co.,* 172 Kan. 484, 241 P.2d 1192 (1952), involved the unlawful detention of a shoplifter by an agent of Montgomery Ward. She was taken to the police station where she was restricted of her liberty for a period of more than one hour and was then released. A verdict against the defendant merchant was upheld.

In 1959, the legislature enacted K.S.A. 21-535a (Corrick), which created the crime of shoplifting and willful concealment of merchandise. K.S.A. 21-535b (Corrick) created for the first time the merchant's defense in Kansas and provided as follows:

"21-535b. Same; defense to actions by persons detained for questioning. In an action for assault, false arrest, false imprisonment, unlawful detention, defamation or slander, brought by any person by reason of having been detained for questioning on the premises of, or in the immediate vicinity of a store or other mercantile establishment, it shall be a defense to such action if such person was detained in a reasonable manner and for not more than a reasonable length of time by a merchant or his authorized employee and if there were reasonable grounds for believing that such person was committing the offense of shoplifting as defined in section 1 [21-535a] of this act."

It should be noted that under the statute, where a civil action is brought to recover damages as a result of a person having been detained on the premises of a store or other mercantile establishment, the merchant has a defense provided three conditions are satisfied: (1) The person must be detained in a reasonable manner; (2) the person must be detained for a reasonable time; and (3) there must be reasonable grounds for believing that person was committing the offense of shoplifting.

The first case which came before the Supreme Court involving the merchant's defense was *Sweaney v. United Loan & Finance Co.*, 205 Kan. 66, 468 P.2d 124 (1970). The court held that K.S.A. 21-535b (Corrick) was not applicable ·in the case because that statute contemplates the detention of a person for questioning in a reasonable manner *immediately after* the suspected shoplifting and before the person leaves the premises, or the vicinity thereof—not several days later. In the *Sweaney* case, the theft of a car had been committed at least two days before and probably longer before the person was detained, and there was no question of immediate detention or pursuit of the person in question. Therefore, the statute was not applicable. *Sweaney* was clearly not a shoplifting case.

In 1969, the legislature enacted the present Kansas criminal code, K.S.A. 21-3424, which created the new offense of unlawful restraint, and in subsection (3) reenacted the merchant's defense. The Judicial Council noted that the exception for merchants is a relocation of the substance of former K.S.A. 21-535b (Corrick). K.S.A. 21-3424 now provides:

"21-3424. **Unlawful restraint.** (1) Unlawful restraint is knowingly and without legal authority restraining another so as to interfere substantially with his liberty.

"(2) This section shall not apply to acts done in the performance of duty by any law enforcement officer of the state of Kansas or any political subdivision thereof.

"(3) Any merchant, his agent or employee, who has probable cause to believe that a person has actual possession of and (a) has wrongfully taken, or (b) is about to wrongfully take merchandise from a mercantile establishment, may detain such person (a) on the premises or (b) in the immediate vicinity thereof, in a reasonable manner and for a reasonable period of time for the purpose of investigating the circumstances of such possession. Such reasonable detention shall not constitute an arrest nor an unlawful restraint.

"(4) Unlawful restraint is a class A misdemeanor."

It should be noted that subsection (1) defines the crime of unlawful restraint as knowingly and without legal authority restraining another so as to interfere substantially with his liberty. K.S.A. 21-3424(2) provides that this section shall not apply to acts of any law enforcement officers of the state of Kansas or of any subdivision thereof. K.S.A. 21-3424(3) then provides for the detention of a shoplifter by a merchant, his agent, or employee provided three conditions are met: (1) the merchant, his agent or employee have probable cause to believe that the person have actual possession of and has wrongfully taken, or is about to wrongfully take merchandise; (2) the detention of the person

must be on the premises or in the immediate vicinity thereof; (3) the detention must be in a reasonable manner and for a reasonable period of time and for the purpose of investigating the circumstances of the possession. The statute then declares that such reasonable detention shall not constitute an arrest nor an unlawful restraint.

K.S.A. 21-3424(2) does not state whether the exclusion of acts done in the performance of duty by law enforcement officers applies in criminal or civil cases. Nor does it state in K.S.A. 21-3424(3) whether the merchant's defense is applicable in civil cases as well as in criminal cases. The question of the applicability of subsection (3) to civil actions for false imprisonment was determined in *Codner v. Skaggs Drug Centers, Inc.,* 224 Kan. 531, 533, 581 P.2d 387 (1978). The court in *Codner* held that the merchant's defense, as set forth in K.S.A. 21-3424(3), is applicable in a civil action for false imprisonment. This clearly has been the law in Kansas since 1959. We have no reason to hold to the contrary in the present case.

We construe K.S.A. 21-3424(2) to mean that the *crime of unlawful restraint* is not applicable to acts done in the performance of a duty by any law enforcement officer of the state or of any political subdivision thereof. However, the merchant's defense in subsection (3) is applicable in a civil case involving an off-duty law enforcement officer who is employed by a merchant as a security officer. The merchant's defense was created to avoid the injustice of the common-law rule which is discussed above. It was designed to protect a merchant and his agents or employees in situations where a suspected shoplifter takes property of the store into his possession and has wrongfully taken or is about to wrongfully take the merchandise from the store. The fact that the agent or employee is an off-duty policeman should not deprive either him or his merchant employer of the merchant's defense if that defense is applicable under the factual circumstances of the case.

In the case now before us, Alco hired an off-duty Dodge City police officer as a security officer. At the time of the incident involving plaintiff, he was out of uniform and working for Alco as a private employee. He was being paid by Alco under a contract with the Police Officers' Benefit Association which is not an agent or entity of the city of Dodge City. In the course of his duty

as a security guard, he observed the plaintiff handling some shoes that were on sale. He then observed what he believed to be the plaintiff picking at the price tag on the shoes and then appearing to reach down to put the shoes on her feet. After she left the area, Fox went to the area where the plaintiff had been standing and found a green clearance tag. Fox then went to the information desk and asked if the tag was like those on shoes and was so advised. Fox then waited until the plaintiff left the store and stopped her in the parking lot outside. According to his evidence, he asked her to come back in the store. She refused, using profane language, and said that she would only go back in the store if she was *forced* to do so. She then went back to the store involuntarily, the shoes were checked, and plaintiff was released. It cannot be denied that defendant Fox was acting in the scope of his duty as a security officer for Alco. Although he displayed his police identification and stated that he was a police officer, the transaction involved the detention of a suspected shoplifter which was within the contemplation of the merchant's defense statute.

Although the word "arrest" was used by Fox and although an arrest report was completed and filed, the restraint of plaintiff involved a "detention" rather than an "arrest." In K.S.A. 1984 Supp. 22-2202, the definition section of the Code of Criminal Procedure, "detention" is defined to mean the *temporary restraint* of a person by a law enforcement officer. "Arrest" is defined as the taking of a person into custody *in order that the person may be forthcoming to answer for the commission of a crime.* Under the facts in this case, the plaintiff was *detained* by Fox for a period of time on the merchant's premises for the purpose of investigating the circumstances of the possession of merchandise by plaintiff. The plaintiff was not taken into custody for the purpose of *charging* her with the commission of a crime and in order that she might be taken before a magistrate; nor was she removed from the premises and taken elsewhere for confinement. The merchant's defense would not be applicable under those circumstances.

The situation present in this case could happen often on occasions where a suspected shoplifter is stopped and requested to remain on the premises for the purpose of investigating the circumstances of his or her possession of merchandise. If the

suspected shoplifter refuses to stay on the premises or refuses to go back into the store for questioning, then the agent or employee of the merchant has the right to use reasonable force to detain the suspected shoplifter. In the present case, plaintiff not only advised Fox that she would not go back into the store but told him *to go ahead and arrest her.* As we see it, he then restrained plaintiff on the premises *for the purpose of investigating the circumstances of her possession of merchandise.* We agree with the Court of Appeals that the evidence in this case presented factual issues for the jury to determine. There was no question that plaintiff was detained in a way which substantially interfered with her liberty. There was clearly a temporary restraint of her person by a law enforcement officer. The issues to be determined by the jury in our judgment were twofold: (1) Did Fox as the agent or employee of Alco have probable cause to believe that the plaintiff had actual possession of and had wrongfully taken merchandise from the store; and (2) was the plaintiff detained in a reasonable manner and for a reasonable period of time for the purpose of investigating the circumstances of such possession. Although the plaintiff argues on appeal that the detention of her person was unlawful as a matter of law, we cannot agree. It was up to the jury to determine the fact issues which are mentioned above. On this point, we, therefore, hold that the trial court did not err in instructing the jury on the merchant's defense (K.S.A. 21-3424[3]).

This holding is contrary to the conclusion adopted by the Court of Appeals. In Syllabus ¶ 13 of the Court of Appeals opinion, it is held that the merchant's privilege to detain suspected shoplifters does not apply to acts done in the performance of duty by law enforcement officers. The Court of Appeals further held in Syllabus ¶ 14 that, under the facts and circumstances of this case, an off-duty police officer working as a private security guard is acting as a police officer when detaining a suspected shoplifter and, therefore, 21-3424(3) is not applicable. We disagree and reverse that holding. We hold that, under the facts and circumstances of this case, an off-duty police officer working as a private security guard for a merchant employer is entitled to assert the merchant's defense provided by K.S.A. 21-3424(3).

Another point raised by the plaintiff on the appeal is that the

trial court erred in excluding evidence of Alco's own standards for detaining suspected shoplifters. The plaintiff offered a poster and Alco's shoplifters manual setting out the company's policy in some detail. Alco instructed its employees that, before apprehending a shoplifter, the employee must see him take the item, see him conceal it, see that he does not pay for it, and apprehend him outside the store. These standards are obviously stricter than the probable cause test required by K.S.A. 21-3424. We agree with the Court of Appeals that a merchant's liability for false arrest should depend on the minimum legal standards established by statute rather than the merchant's own standards. A merchant should not be penalized for establishing higher standards for its employees than the applicable statutory standards. This is the holding in *Jones v. Montgomery Ward & Co., Inc.*, 49 Or. App. 231, 236-237, 619 P.2d 907 (1980). This issue is also discussed in an annotation at 31 A.L.R.3d 705, where cases are cited on both sides of the issue. We agree with the Court of Appeals that the trial court did not err in excluding this evidence.

The last point raised by the plaintiff on the appeal is that the trial court erred in refusing to give the plaintiff's requested instruction defining probable cause. As noted above, one of the primary issues in the case was whether defendant Fox had probable cause to believe that the plaintiff Alvarado had *wrongfully* taken merchandise from the Alco store. The instructions given by the court at no place explained or defined for the jury the meaning of probable cause. We agree with the Court of Appeals that this was reversible error. The jury was entitled to an instruction on that subject. A proper instruction defining probable cause would have aided the jurors in determining whether Fox's actions were *reasonable*. We suggest that on retrial the court should give an instruction based upon the definition of probable cause set forth in *State v. Abu-Isba*, 235 Kan. 851, 685 P.2d 856 (1984). At page 854 of the opinion, this court defined probable cause as follows:

"Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed."

*State v. Press*, 9 Kan. App. 2d 589, Syl. ¶ 2, 685 P.2d 887 (1984), and *State v. Weigel*, 228 Kan. 194, 612 P.2d 636 (1980).

For the reasons set forth above, the judgment of the district court is affirmed in part and reversed in part and the case is remanded for a new trial. The judgment of the Court of Appeals is affirmed in part and reversed in part for the reasons set forth in this opinion.