· **Paula Darlene HAMPTON and Demetria Cooper, Plaintiffs,**

v.

**DILLARD DEPARTMENT STORES, INC., Defendant.**

**No. CIV.A. 97–2182–KHV.**

United States District Court, D. Kansas.

Nov. 25, 1997.

Arthur A. Benson, II, Aften P. McKinney, Kathy D. Finnell, Benson & Associates, Kansas City, MO, for Plaintiffs.

Elaine D. Koch, Spencer, Fane, Britt & Browne, Kansas City, MO, Karen Kessler Cain, Spencer, Fane, Britt & Browne, Overland Park, KS, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiffs Paula Hampton and Demetria Cooper seek damages for acts committed by Dillard Department Stores, Inc. ("Dillard's"), through its security officer Tom Wilson. Specifically, plaintiffs claim that Wilson discriminated against them on the basis of race, in violation of 42 U.S.C. § 1981, by depriving them of their right to make, perform, modify and terminate a contract and to enjoy all benefits, privileges, terms and conditions of their contractual relationship with Dillard's. Plaintiffs also claim that Wilson falsely imprisoned them in violation of Kansas law. This matter comes before the Court on *Defendant's Motion For Summary Judgment* (Doc. # 67) filed September 24, 1997. For the reasons stated more fully below, the Court finds that defendant's motion should be sustained.

### Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose of the summary judg-ment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. *Meredith v. Beech Aircraft Corp.,* 18 F.3d 890, 893 (10th Cir.1994). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552 (emphasis in original). Once the moving party properly supports its motion, the nonmoving party may not rest upon mere allegation or denials of his or her pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir.1993). The court reviews the evidence in a light most favorable to the nonmoving party, *e.g., Thrasher v. B & B Chem., Co., Inc.,* 2 F.3d 995, 996 (10th Cir.1993), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Summary judgment is appropriate unless there is a genuine issue of material fact—

meaning that a "reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

### Factual Background

The following material facts are undisputed or, where disputed, are viewed in the light most favorable to plaintiffs:

Plaintiffs are African–American females. On April 5, 1996, they were shopping for Cooper's son in the children's department of Dillard's store in Overland Park, Kansas. Plaintiffs had four children with them—an infant, a one-year-old and two seven-year-olds. Dillard's plain-clothed security officer, Tom Wilson, noticed plaintiffs in the children's department and began watching them. Wilson particularly watched Cooper, who had a rolled-up dark cloth item in her hand. Wilson saw Cooper looking toward the ceiling and looking around, which he interpreted as checking to see if someone was watching. When plaintiffs entered a fitting room, Wilson asked Pam Fitzgerel, another Dillard's employee, to watch plaintiffs in the fitting room. Fitzgerel could see into plaintiffs' fitting room because the door was open. Fitzgerel saw Cooper push a rolled-up cloth item into her jacket and reported her observation to Wilson, stating at least twice that she was "positive" she had observed Cooper putting something underneath her coat. When they left the fitting room, plaintiffs went to an open cash register and Hampton purchased an outfit for Cooper's son. In return for the purchase Dillard's gave plaintiffs coupons for men's cologne samples, redeemable at the men's fragrance counter. Plaintiffs then proceeded to the fragrance and cosmetics area, which is located at the nexus where Dillard's meets the mall.

Wilson interrupted plaintiffs while they were redeeming the cologne samples from fragrance consultant Betty Chouteau. Wilson informed plaintiffs that someone had observed Cooper placing something blue underneath her coat. While in the children's department Cooper had handled two pieces of blue merchandise. Hampton purchased one of them, and Cooper gave the other to one of the children to return to the store display. Cooper had also carried her son's coat.

Wilson told plaintiffs that he needed to look inside their Dillard's bag.[1] He compared the receipt to the merchandise in the bag and found that it matched. Hampton told Wilson that she did not appreciate being accused of shoplifting and that she spent a great deal of money at Dillard's and did not deserve to be treated "this way." Hampton was upset and raised her voice. Wilson told Hampton to calm down or he would call the Overland Park Police and have plaintiffs removed from the store. Wilson did not suggest that he would call the police to investigate the alleged shoplifting. Nor did he physically touch plaintiffs, arrest them, or use any racial epithets or derogatory remarks to or about them.

Wilson "shoved" the bag and merchandise at Hampton, remarking "that's fine." Plaintiffs did not attempt to redeem the fragrance coupons after the encounter because, according to Hampton, "it wasn't a concern to her." Instead, plaintiffs proceeded to customer service to complain about Wilson. Wilson did not follow plaintiffs to the customer service department. No more than five minutes elapsed between the time Wilson approached plaintiffs at the fragrance counter and the time he returned their property to them.

Plaintiffs argue that Dillard's had a pattern and practice of subjecting African–American shoppers to disparate security practices, and that Wilson's surveillance, stop, detention and search were part of that pattern and practice. In support of this position, plaintiffs offer deposition testimony from past and present security officers who testify that African–American shoppers are treated differently than white shoppers; that sales associates identify them as shoplifting suspects with no articulated basis other than race and presence in a particular department; and that African–American shoppers

---

1. Hampton understood that Wilson was a Dillard's security officer after his first comments to them. Cooper was not initially aware of Wilson's identity and, in fact, believed he could be a "pervert." Cooper finally understood Wilson's identity near the end of the encounter when he gave Hampton his name and title.

have complained to store management about racially discriminatory treatment of this kind.

## Analysis

### A. Race Discrimination under 42 U.S.C. § 1981

Litigation under Section 1981 most commonly involves the right to make and enforce contracts of employment; claims involving retail transactions are infrequent. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.1996), and cases cited therein. Section 1981 addresses racial discrimination in contractual relationships. As amended by the Civil Rights Act of 1991, it provides as follows:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens ....

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(a)-(c).

■ For summary judgment purposes, Section 1981 claims are analyzed under the burden-shifting scheme originally developed under Title VII in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Thomas v. Denny's Inc.*, 111 F.3d 1506, 1509–10 (10th Cir.1997) (elements of plaintiff's case and allocation of burdens same under Title VII and Section 1981). Under the *McDonnell Douglas*

framework, plaintiffs first must establish a prima facie case of discrimination. Accordingly, plaintiffs must demonstrate that (1) they are members of a racial minority; (2) defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i .e., the making and enforcing of a contract).[2] *See Morris*, 89 F.3d at 413; *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir.1994); *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993); *Lewis v. J.C. Penney Co., Inc.*, 948 F.Supp. 367, 371 (D.Del. 1996).

■ Plaintiffs claim that Wilson's actions (1) deprived them of their right to make, perform, modify and terminate a contract, and (2) violated their right to enjoy all benefits, privileges, terms and conditions of their contractual relationship with Dillard's. With regard to the first claim, however, plaintiffs identify no contract with which Wilson interfered. A claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest. *See Morris*, 89 F.3d at 414–15 (citing *Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262 (10th Cir.1989)). Because plaintiffs fail to make such a claim, summary judgment must be entered on plaintiffs' theory that defendant deprived them of their right to make, perform, modify and terminate a contract.

■ Alternatively, plaintiffs argue that freedom from racially discriminatory security practices is a benefit or privilege of a merchant's implied contractual offer to let them shop in its store. Plaintiffs cite no precedent for this theory and the cases have not recognized such grounds for recovery. Indeed, the United States District Court for the Dis-

---

**2.** Defendant asserts that plaintiffs must meet a four part test: (1) that they are members of a protected class; (2) that they attempted to contract for certain services; (3) that they were denied the right to contract for those services; and (4) that such services remained available to others outside the protected class. *See White v. Denny's, Inc.*, 918 F.Supp. 1418, 1424 (D.Colo. 1996). The Court finds that the three part test set forth above is the correct standard because evidence regarding the treatment of others out-

side the protected group is not present in every case of discrimination. Where similarly situated non-protected individuals are present, however, disparate treatment may give rise to an inference of discrimination. *See Rawlins–Roa v. United Way*, 977 F.Supp. 1101, 1105 n. 2 (D.Kan.1997). Moreover, the elements of a prima facie case are flexible and are not intended to be rigidly applied. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 n. 2 (10th Cir.1994).

trict of Delaware recently considered and rejected a similar argument. In *Lewis v. J.C. Penney*, 948 F.Supp. at 371–72, plaintiff sought to premise Section 1981 liability upon an implied contract between commercial establishments and the public, to the effect that those who enter store premises will be treated equally regardless of race. The court rejected this theory, reasoning that to allow plaintiff to proceed under such a theory "would come close to nullifying the contract requirement of section 1981 altogether, thereby transforming the statute into a general cause of action for race discrimination in all contexts." *Id.* This Court agrees. Congress did not intend such a result when it extended Section 1981 to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See* 42 U.S.C. § 1981(b) legislatively overruling *Patterson v. McLean Credit Union*, 491 U.S. 164, 176–77, 109 S.Ct. 2363, 2372–73, 105 L.Ed.2d 132 (1989) (holding that Section 1981 does not extend to conduct after contract formation).[3] Accordingly, plaintiffs have failed to establish the third element of their prima facie case—that defendant infringed rights secured by Section 1981 when it interfered with the benefits and privileges of such a contract between Dillard's and its customers.

This holding does not fully resolve the matter, because in the *Pretrial Order* (Doc. # 105) entered November 17, 1997, plaintiffs advance the factual theory that Wilson interrupted them while they were redeeming their free cologne coupons, and that in doing so, he violated their rights to enjoy the benefits and privileges of their contract with Dillard's. Defendant does not deny that the samples were a benefit for purchases at Dillard's and admits that plaintiffs never redeemed the coupons. Defendant's motion for summary judgment does not discuss whether this in-

terruption violated plaintiffs' right to enjoy this contractual benefit under Section 1981. This omission is understandable because under the *Scheduling Order* (Doc. # 18) entered July 9, 1997, defendant was required to file its motion for summary judgment before the pretrial order had been finalized. Indeed, defendant objected to those portions of the pretrial order which newly identified plaintiffs' inability to redeem the fragrance coupons as a basis for recovery. The Court allowed plaintiffs to proceed on their factual theory because it appeared to be clarification, however, and not a departure from previously pleaded grounds for relief. Nonetheless, summary judgment on this issue is inappropriate.[4]

## B. False Imprisonment

■ Plaintiffs claim that when Wilson detained them for "no longer than" five minutes, he falsely imprisoned them in violation of Kansas law. To state such a claim "all that is necessary is that the individual be restrained of [her] liberty without any sufficient legal cause therefor, and by words or acts which the one being restrained fears to disregard." *Thompson v. General Fin. Co.*, 205 Kan. 76, 468 P.2d 269, 280 (1970). A person must be held against her will, however, because "if one agrees of one's own free choice to surrender freedom of motion, as by remaining in a room or accompanying another voluntarily, to clear oneself of suspicion or to accommodate the desires of the other, rather than yielding to the constraint of a threat, then there is no imprisonment." *See Wright v. Montgomery Ward & Co., Inc.*, 814 F.Supp. 986, 989 (D.Kan.1993) *aff'd* 25 F.3d 1059 (10th Cir.1994), citing W. Page Keeton, et al., Prosser & Keaton on the Law of Torts § 11, at 49 (5th ed.1984). Wilson's statement to Hampton—that she needed to calm down or he would call the Overland Park Police—

---

3. To the extent plaintiffs seek relief for defendant's interference with their right to purchase personal property they could have sought relief under 42 U.S.C. § 1982, which provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

4. The Court notes that although the coupons were a benefit of purchase, Cooper did not make a purchase. Accordingly, the Court doubts whether she has an actionable claim under Section 1981.

does not constitute false imprisonment. No liability attaches for future threats, such as calling the authorities or having plaintiffs arrested. Such conduct amounts to moral pressure, but not unlawful restraint. *See id.*

■ Alternatively, even assuming that Wilson restrained plaintiffs' liberty under this standard, the Court finds that defendant is entitled to summary judgment under the statutory merchants' defense, K.S.A. § 21–3424, which provides as follows:

> Any merchant, or a merchant's agent or employee, who has probable cause to believe that a person has actual possession of and has wrongfully taken, or is about to wrongfully take merchandise from a mercantile establishment, may detain such person on the premises or in the immediate vicinity thereof, in a reasonable manner and for a reasonable period of time for the purpose of investigating the circumstances of such possession. Such reasonable detention shall not constitute an arrest nor criminal restraint.

K.S.A. § 21–3424(c). This provision extends to civil actions for false imprisonment. *Alvarado v. City of Dodge City*, 238 Kan. 48, 708 P.2d 174, 185 (1985); *Codner v. Toone*, 224 Kan. 531, 581 P.2d 387, 389 (1978).

■ Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed. *Alvarado*, 708 P.2d at 185. Plaintiffs argue that summary judgment on the merchants' defense statute is inappropriate because the existence of probable cause is a jury question. Plaintiffs are correct if the evidence, viewed in the light most favorable to plaintiffs, would permit the jury to reasonably find for plaintiffs on this issue. In this case, however, plaintiffs fail to identify material questions of fact which prevent summary judgment on the issue of probable cause.[5]

■ While plaintiffs argue that a jury issue exists as to Wilson's credibility, they cite no evidence which seriously calls into question either Wilson's credibility or that of Fitzgerel—who independently observed Cooper in the fitting room. In the circumstances, plaintiffs' evidence, taken together, is insufficient to establish a reasonable inference that Wilson's testimony is unworthy of belief. *See Cone*, 14 F.3d at 530 (evidence insufficient to raise doubts about defendant's motivation). Cooper had reached the nexus where the store met the mall; Wilson had observed plaintiff carrying a dark cloth-like item in her hand and looking around "as if to see if someone was watching her;" and Fitzgerel observed Cooper pushing a rolled-up cloth item into her jacket while in the fitting room. Accordingly, the Court finds that no material questions of fact preclude the entry of summary judgment on the basis of the merchants' defense statute. Defendant's motion for summary judgment on plaintiffs' false imprisonment claim is sustained.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 67) filed September 24, 1997, should be and hereby is sustained. The motion does not address plaintiffs' claim that defendant interfered with their ability to redeem the perfume samples, however, and plaintiffs may proceed on their claim of race discrimination under 42 U.S.C. § 1981 in this limited regard.

**IT IS HEREBY FURTHER ORDERED** that Demetria Cooper on or before December 1, 1997, show cause in writing why her claims under 42 U.S.C. § 1981 should not be dismissed for legal insufficiency. On or before December 3, 1997, defendant shall file any response.

---

5. Indeed, plaintiffs admit that "the parties' evidence of what happened, the material facts, may not vary substantially . . . ." *See* plaintiffs' *Memo-* randum In Opposition To Defendant's Motion For Summary Judgment* (Doc. # 73) filed October 14, 1997, at p. 39.