ANDERSON, Circuit Judge,
dissenting:
I agree with the majority opinion that the district court correctly dismissed Ms. Cooper’s claims against Dillard. However, because I believe that no § 1981 violation occurred in connection with Ms. Hampton’s interaction with Dillard employees either, I would reverse the district court’s denial of Dillard’s motion for judgment as a matter of law and overturn the jury verdict in favor of Ms. Hampton.
I realize that we do not lightly overturn jury verdicts. We may only do so if “there is no legally sufficient evidentiary basis ... with respect to a claim.” Harolds Stores, Inc. v. Dillard Dep’t Stores, Inc., 82 F.3d 1533, 1546 (10th Cir.1996). I believe Dillard has met that burden in this case. I therefore respectfully dissent.
I assume for the sake of argument that the coupon is a benefit or privilege of Ms. Hampton’s contractual relationship with Dillard. Bearing in mind that § 1981 requires purposeful and discriminatory conduct, there is absolutely no evidence that Mr. Wilson intentionally interfered with her redemption of that coupon when he approached her and Ms. Cooper, based upon probable cause to suspect that Ms. Cooper had shoplifted, and asked to look in Ms. Hampton’s bag at a location near the store exit.
Indeed, there is no evidence that, when Mr. Wilson approached Ms. Hampton and Ms. Cooper and asked to examine the shopping bag, he even knew that they were redeeming fragrance coupons. When questioned about the incident at trial, Mr. Wilson testified as follows:
Q: What did you think Paula Hampton and Demetria Cooper were doing when you approached them?
A: They were getting ready to exit the Dillard’s store to go out into the mall.
Q: Okay. Did you notice that they were speaking with a cosmetic associate or a fragrance consultant when you approached the two ladies?
A: No, I did not.
Q: Did you knowingly prevent Paula Hampton from receiving a free cologne • sample?
A: No, I did not.
Q: Did you intend to interfere with Paula Hampton obtaining a free sample of cologne on April 5th, 1996?
A: No.
Q: Did you have any desire to prevent Paula Hampton from obtaining a free sample of cologne on April 5th, 1996?
A: No, I did not.
Q: Did Ms. Hampton ever tell you that you interfered with her receiving a free sample of cologne on that date, April 5th, 1996?
A: No, she did not.
Wilson test., Dillard App. Vol. 3 at 634. Plaintiffs produced no — absolutely zero— evidence to refute Mr. Wilson’s testimony on that point and there is nothing in this record showing that he intended to interfere with their redemption of the fragrance coupons. And while the majority correctly notes that credibility determinations are within the jury’s province, I note that the district court, in concluding Mr. Wilson had probable cause to suspect plaintiffs of shoplifting, specifically stated that plaintiffs “cite no evidence which seriously calls into question ... Wilson’s credibility.” Hampton v. Dillard Dep’t Stores, Inc., 985 F.Supp. 1055, 1061 (D.Kan.1997). Nothing in Ms. Hampton’s or Ms. Cooper’s testimo *1122 ny remotely suggests that Mr. Wilson’s conduct towards them indicated an intention to prevent either plaintiff from redeeming the fragrance coupons. All the evidence in this case points one way only: that Mr. Wilson’s interference with Ms. Hampton’s redemption of her fragrance coupon was purely fortuitous, incidental and completely collateral to the only thing Mr. Wilson intentionally did — i.e., stop and question Ms. Hampton and Ms. Cooper briefly before they left the store because he had probable cause to believe one of them had shoplifted merchandise.
My conclusion is further supported by the fact that there is no evidence that either Mr. Wilson’s or plaintiffs’ conduct, or Ms. Hampton’s damages arising from her encounter with Mr. Wilson, would have been different in any way had Ms. Hampton already received her fragrance sample. There is no evidence that anything at all in this case would have been different had Mr. Wilson intercepted plaintiffs before, during or after they redeemed their fragrance coupons. In other words, all the evidence indicates that it was the wrongful accusation of shoplifting, not the denial of her free fragrance sample, which caused Ms. Hampton’s alleged injuries. But § 1981 does not provide a remedy for the wrongful accusation of shoplifting, absent some interference with a contract benefit.
Further, the interference with the contract benefit (the fragrance coupon in this case) must be racially motivated. The majority acknowledges that discriminatory surveillance, while reprehensible, is not itself actionable under § 1981. Thus, to succeed on her § 1981 action in this case, Ms. Hampton must prove that Mr. Wilson’s interference with her redemption of the fragrance coupon was itself racially motivated. My review of the record reveals no legally sufficient evidence of such racial motivation in Mr. Wilson’s interaction with Ms. Hampton. Even if the original surveillance of plaintiffs was race-based, any claim that Mr. Wilson’s stop and questioning of them was race-based is utterly inconsistent with the district court’s specific finding, amply supported by the evidence in this case, that Mr. Wilson had probable cause to stop and question them. The existence of probable cause was a wholly sufficient reason to stop the plaintiffs.[1]
Additionally, there was no evidence surrounding the particulars of the stop that suggests Mr. Wilson stopped and questioned plaintiffs on the basis of race. There is no evidence that Mr. Wilson made any racially derogatory remarks or acted or conducted himself in any way which suggested that he was preventing plaintiffs from redeeming their fragrance coupons because they were African-American. There is no evidence that he had ever said or done anything suggesting he was racist or treated African-Americans differently from white customers. Indeed, there is no evidence that he handled this particular investigation into shoplifting any differently from any other shoplifting investigation involving any other store patrons, of any racial background. Ms. Hampton herself testified that she had frequently shopped at Dillard, had made numerous purchases there without incident, and there was absolutely no evidence that Dillard in any way had ever discouraged her, or wished to discourage her, from patronizing its store.
In sum, Ms. Hampton’s § 1981 claim hangs on the thread that the free fragrance coupon given to her following her *1123 purchase was a benefit of her contractual relationship with Dillard, and that Mr. Wilson, intentionally and with discriminatory animus, interfered with her redemption of that coupon. Because the evidence in this case clearly demonstrates that any interference by Mr. Wilson with Ms. Hampton’s coupon redemption was completely unintentional, accidental, and in no way based upon her race, but only resulted from the fortuity that the fragrance counter was near a store exit, I would find that there is no legally sufficient evidence supporting the jury’s verdict in favor of Ms. Hampton.

. Indeed, there is no evidence that Dillard security personnel, or Mr. Wilson, treated white customers about whom they had probable cause to suspect shoplifting any differently than they treated black customers.